UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BOBBY S. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 20-095-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ANDREW M. SAUL, Commissioner of | ) | **MEMORANDUM OPINION** |
| Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Bobby Thomas filed this action against Defendant Andrew Saul, Commissioner of Social Security, challenging the denial of his application for Social Security benefits.  The parties have filed cross-motions for summary judgment.  [Record Nos. 16, 18] Thomas argues that the Administrative Law Judge ("ALJ") assigned to his case failed to properly evaluate relevant medical opinion evidence and erroneously concluded that his mental impairments were not debilitating.  [Record No. 16-1, pp. 1-3]  However, following a full review of the record, the Court concludes that the Commissioner's decision is supported by substantial evidence.  Therefore, his motion for summary judgment will be granted and the relief sought by Thomas will be denied.

## I.  PROCEDURAL HISTORY

Thomas filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") on November 29, 2016.  [*See* Transcript, hereafter "Tr.", 227-28.]  He originally alleged a disability onset date of February 12, 2013, but later amended that date to October 16, 2015.  [Tr. 59, 227-28]  His application was denied initially and upon

reconsideration.  [Tr. 138-57, 164-67]  At Thomas's request, an administrative hearing was held before ALJ Davida Isaacs on January 10, 2019.  [Tr. 35-68, 176-77]  ALJ Isaacs issued an unfavorable decision on April 3, 2019.  Thereafter, the Appeals Council denied review on January 8, 2020.  [Tr. 1-6, 16-34]  Thomas has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.  STATEMENT OF FACTS

Thomas was thirty-seven years old at the time of his administrative hearing.  [Tr. 227]  He has a high school education and past relevant work as a border bender and material handler at a bedspring manufacturing facility.  [Tr. 43-44, 266-69]  These positions required that Thomas stand the "whole time" and routinely lift up to fifty pounds.  [Tr. 42-44]  After his back pain allegedly prevented him from working, Thomas exhausted his medical leave time and was terminated.  [Tr. 45, 47]  He later filed an application for DIB alleging that the following conditions limited his ability to work: rheumatoid arthritis ("RA"), carpal tunnel syndrome, severe sleep apnea, muscle spasms in his back, a pinched nerve in his right elbow, nerve pain in his hip and lower back, severe fatigue, anxiety, and mental health issues.  [Tr. 237]  Thomas weighed 275 pounds at the time of his application for benefits.  [*Id.*]

During the administrative hearing, Thomas stated that he was primarily impeded by pain associated with RA, but that mental health issues also contributed to his impairments.  [Tr. 45]  He initially sought treatment for joint pain and aching in 2012, and Dr. Jeffrey Neal identified that his symptoms were the result of RA.  [*See* Tr. 480-483.]  At the time, Thomas chose to forego aggressive treatment because he and his wife were attempting to conceive a child.  [Tr. 478]  However, he was prescribed less intensive medication, and his condition significantly improved.  [*See* Tr. 476 (Dr. Neal's treatment notes indicating that Thomas's

condition was "[m]uch better" with "[n]o active swelling.").]  After his wife became pregnant, Thomas consented to more intensive treatment, and his disease activity was consistently reported as low with no swelling.  [Tr.  448, 452, 454, 456, 459]  In early 2014, however, when Thomas and his wife attempted to conceive a second time, he reverted to the milder treatment and his RA symptoms flared.  [Tr. 442]  Dr. Neal treated this flare (and subsequent flares) with Enbrel, which returned Thomas to low disease activity.  [*See* Tr. 410, 415, 428, 435, 439.]  Since 2014, Thomas has consistently refused Dr. Neal's suggestion that he undergo more aggressive treatment.  [Tr. 408, 411, 414, 416, 420, 421, 423, 424 (suggesting that Enbrel is "more effective" when combined with other treatments), 425, 428, 429]

Thomas has received treatment for obsessive-compulsive disorder ("OCD"), anxiety, and depression since August 2013.  [Tr. 78-79, 573, 504-22, 649, 666-71]  He alleges that these impairments, particularly the OCD, impaired his ability to work by slowing his pace of production. [Tr. 46, 573]  During the administrative hearing, Thomas identified OCD as "probably one of the biggest problems . . . in [his] life right now."  [Tr. 50]  He explained that he is a "checker," which means he compulsively checks common items to ensure that they are properly secured.  [Tr. 51, 575]  Common targets of his compulsion include the cap on the gas tank of his car, water faucets, doorknobs, and his punch time-card (while he was employed). [Tr. 45, 50, 575, 616, 617, 661, 671]  He also alleges that social phobia (a symptom of his mental health impairments) prevented him from communicating well with supervisors and coworkers and continues to "keep[] [him] from getting out in public."  [Tr. 47-48]

ALJ Isaacs found that Thomas suffered from the following severe impairments that significantly limited his ability to perform basic work activities during the relevant period: RA, right carpal tunnel and cubital tunnel syndrome, depression, anxiety, OCD, borderline

intellectual functioning, and morbid obesity.  [Tr. 21]  She also determined that Thomas's sleep apnea was a non-severe impairment because it caused "no more than a minimal limitation in [his] ability to perform basic work activities."  [Tr. 22]  However, ALJ Isaacs determined that Thomas did not suffer from an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments ("Listings") contained in 20 C.F.R. pt. 404, subpt. P, app. 1 for mental or physical disorders.  [Tr. 22; *see also* 20 C.F.R. §§ 404.1520(d), 416.920(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").]

The ALJ first considered whether Thomas's physical impairments met a Listing.  She considered Listing 14.09, which deems a claimant disabled when his or her inflammatory arthritis is accompanied by specified symptoms.  20 C.F.R. pt. 404, subpt. P, app. 1.  To meet the Listing, a claimant must show that he or she has one or more of the following symptoms: (1) persistent inflammation or deformity of a major peripheral joint that impacts the claimant's ability to ambulate or perform fine movements; (2) inflammation or deformity in a major peripheral joint that involves an organ or body system and is accompanied by fever, fatigue, malaise, or involuntary weight loss (collectively, the "constitutional symptoms"); (3) ankylosing spondylitis (arthritis that causes spinal stiffness); or (4) repeated manifestations of inflammation with at least two of the constitutional symptoms and a marked limitation on daily activities, social functioning, or concentration.  *Id.*  ALJ Isaacs concluded that Thomas's arthritis symptoms did not "reach the level required" under Listing 14.09.  [Tr. 22]  She later noted that, once Thomas began RA treatment, which was very soon after the alleged onset date, his "symptoms were minimal."  [Tr. 25]

- 4 -

Isaacs next considered whether Thomas's impairments related to carpal tunnel and cubital tunnel syndromes met Listing 11.00, which concerns neurological disorders that "cause disorganization of motor function."  [Tr. 22; 20 C.F.R. § Pt. 404, Subpt. P, App. 1]  She concluded that the evidence did not "demonstrate an inability to perform fine and gross movements effectively," which is one of the requirements under the definition of "disorganization of motor function."  [*Id.*]  ALJ Isaacs also noted that Thomas's obesity, when considered in combination with his other physical impairments, did not cause the degree of limitation required to meet or equal a Listing.  [Tr. 22]

Next, the ALJ considered whether Thomas's mental impairments met either Listing 12.04, 12.06, or 12.11.  [Tr. 22]  These listings address depressive disorders, anxiety and obsessive-compulsive disorders, and neurodevelopmental disorders, respectively.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  To meet one of the three Listings, a claimant must show that his or her mental impairments are accompanied by "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning: [u]nderstand, remember, or apply information; [i]nteract with others; [c]oncentrate, persist, or maintain pace; or [a]dapt or manage oneself."  [*Id.* (collectively "the Paragraph B criteria")]  ALJ Isaacs considered each of the criteria in turn.

ALJ Isaacs found that Thomas's ability to understand, remember, or apply information was only mildly limited.  [Tr. 23]  Although he alleged that he struggled to follow instructions and read the newspaper, the ALJ found that Thomas's ability to understand and remember information was demonstrated by his ability to testify and answer questions at the hearing. [*Id.*]  Regarding his ability to interact with others, she found that Thomas had only a moderate

limitation.  [*Id.*]  The ALJ concluded that his allegations of social phobia were outweighed by the fact that he sometimes visited the store and attended church.  [*Id.*]

ALJ Isaacs determined that Thomas suffered a moderate limitation regarding his ability to concentrate, persist, or maintain pace.  [Tr. 23]  She noted that his obsessive habits affected his concentration, but found that Thomas was able to concentrate well enough to drive, count change, and maintain a bank account.  [*Id.*]  Finally, the ALJ reasoned that his ability to adapt or manage himself was only moderately limited.  [*Id.*]  Despite his alleged inability to perform personal care tasks, Thomas sometimes shopped for himself and he was "consistently compliant with taking his medication."  [*Id.*]  Therefore, ALJ Isaacs concluded that Thomas had not demonstrated that he met the Paragraph B criteria of the mental-impairment Listings. [*Id.*]

The ALJ next considered whether Thomas had shown the other requisite criteria of Listings 12.04, 12.06, or 12.11.  A claimant may meet one of these Listings by showing that his or her disorder is "serious and persistent," that is, the symptoms persist for over two years and cause a "minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life."  20 C.F.R. pt. 404, subpt. P, app. 1 (collectively "the Paragraph C criteria").  ALJ Isaacs found that the evidence indicated that Thomas could adapt to changes in his environment without serious difficulties.  [Tr. 23]  As such, she concluded that he had not demonstrated that his mental impairments met a Listing.

Having concluded that Thomas did not meet a Listing, the ALJ determined that he had a residual functional capacity ("RFC") capable of performing light work, subject to the following limitations: he can not climb ladders or scaffolds; he can engage in no more than frequent bilateral handling and fingering; he can have no more than occasional interaction with

coworkers and no interaction with the public; he cannot engage in commercial driving; and he may be off-task up to five percent of a workday and absent once per quarter. [Tr. 24] She found that Thomas's medical impairments would not prevent him from performing this type of work. More specifically, she concluded that, while his medically determinable impairments could reasonably be expected to cause some of the alleged symptoms that limit his ability to work, his statements concerning the intensity, persistence, and limiting effects of those symptoms were not significantly consistent with the evidence. [Tr. 25]

For example, ALJ Isaacs noted that Thomas chose to forego more intensive treatment of his physical ailments several times. [Tr. 25] Specifically, she noted that he would experience occasional RA flare-ups when he missed his medication or engaged in unexpected, substantial physical activity, but otherwise his symptoms were managed well with medication. [Tr. 410, 415, 428] And his consistent refusal to undergo more aggressive treatment "indicate[d] that the claimant's symptoms were not as severe as alleged." [Tr. 25; *see also* Tr. 340, 405, 416, 422] She reached similar conclusions regarding his carpal and cubital tunnel syndromes. [Tr. 25]

The ALJ also concluded that Thomas's statements regarding the severity of his mental impairments were contradicted by the evidence. In particular, the medical evidence did not support Thomas's claim that his symptoms precluded him from performing the work set forth in the RFC. [Tr. 26] For example, the ALJ reasoned that Thomas's obsessive "checking" was not "particularly outside the norm of functional behavior," and would not likely affect his work performance. [*Id.*] She also found that his social phobia did not prevent him from going to stores or places with large crowds, and it was unlikely to prevent him from performing work within the RFC. [*Id.*]

As further support for the severity of his mental impairments, Thomas alleged that he lost a significant amount of weight due to stress and anxiety.  [Tr. 42]  Thomas testified that he weighed 215 pounds on the date of the administrative hearing.  [Tr. 42]  While ALJ Isaacs pointed out that the weight loss is well-documented in the record, she found that Thomas's claims were inconsistent with the evidence.  [Tr. 26]  For example, evidence indicated that Thomas appeared to have been focused on losing weight through diet and exercise.  [*See, e.g.,* Tr. 611, 613, 616, 617.]  On other occasions, however, Thomas reported being unable to eat due to stress that was primarily caused by marital problems.  [Tr. 613, 616, 617, 649]  ALJ Isaacs found that these contradictory assertions undermined his subjective complaints, and she discredited his allegations.  [Tr. 26]

ALJ Isaacs also relied on the various medical opinions provided.  She gave "great weight" to Dr. Robert W. Genther's consultative psychiatric examination of Thomas.  [Tr. 26, 392-403]  Dr. Genther found that Thomas's mental health symptoms caused predominantly mild impairments.  [Tr. 400-01]  However, he concluded that Thomas suffered mild to moderate impairments on his ability to "relate to employers and coworkers," "work with others without being distracted or overwhelmed," "deal with the public," and "tolerate [the] stress and pressure associated with day-to-day work activity."  [*Id.*]  Dr. Genther's opinion noted that moderate impairments "require significant structure and/or modifications in traditional work settings such as those found in a sheltered workshop."  [*Id.*]  ALJ Isaacs found that the evidence "support[ed] the mild to moderate limitations provided" in Dr. Genther's report.  [Tr. 26]

The ALJ assigned "partial weight" to the state agency medical consultative opinions provided by Drs. Deborah Carter, Alex Guererro,[1] Shannon Duncan, Laura Cutler, Douglas Back, and Michelle Bornstein.  [Tr. 26, 69-86, 114-136, 138-157]  She found that the medical evidence supported the mental limitations assessed by these physicians, but she found no support for the physical restrictions suggested above those included in the RFC.  [Tr. 27]  Specifically, the ALJ determined that Thomas did not require "environmental limitations" to account for his RA based on her previous conclusion about the significance of his symptoms. [*See* Tr. 25, 131.]

ALJ Isaacs assigned "little weight" to the medical source statement of Dr. Cristie Kincaid.  [Tr. 27]  She found that the evidence did not "remotely support the marked limitations" on mental functioning that Dr. Kincaid reported.  [Tr. 27, 697]  The ALJ bolstered this conclusion by noting that Dr. Kincaid had been treating Thomas for a short time prior to providing the opinion.  [Tr. 27]  She also assigned little weight to Dr. Neal's treating source statement because it was not actually prepared by Dr. Neal and it was provided in February 2016, prior to the denial of Thomas's prior application for DIB.  [Tr. 27, 700]

Moreover, ALJ Isaacs gave no weight to the opinions of Thomas's mother and registered nurse practitioner Rebecca Holbrook-Watkins.  [Tr. 27]  The ALJ found that Holbrook-Watkins's findings of marked or extreme limitations were not supported by the record.  [*Id.*; Tr. 590]  She also suggested that Holbrook-Watkins may have been misled

---

[1]      Drs. Carter and Guererro's opinions were provided at the reconsideration level of Thomas's prior application for DIB, which alleged an onset date of January 6, 2012.  This application was denied, and an unfavorable administrative decision was issued on October 15, 2015.  [Tr. 59]  For this reason, Thomas' current application seeks benefits beginning on October 16, 2015.  [*Id.*]

because she relied on Thomas's allegations regarding his weight loss, which were contradicted by the record.  [Tr. 27, 593]

Although Thomas's RFC precluded him from performing his past relevant work, ALJ Isaacs found that jobs exist in significant numbers in the national economy that Thomas could have performed during the relevant period.  [Tr. 28]  As such, she concluded that he was not disabled.  [Tr. 29]

## III.  STANDARD OF REVIEW

The Act defines a "disability" as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  To determine whether a claimant is disabled under the Act, the ALJ follows "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  The claimant bears the burden of satisfying the first four steps of the process, and the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 404.1520(b).  Second, the claimant must show that he suffers from a severe impairment or a combination of impairments that limits his physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  At step three, if the claimant can demonstrate that he has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R.

- 10 -

§ 404.1520(d).  But if the claimant does not meet a Listing, the ALJ will assess and make a finding about a claimant's RFC before moving to step four.  20 C.F.R. §§ 404.1520(e), 404.1545.

Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work.  20 C.F.R. § 404.1520(e).  If the claimant can perform his past work, he is not disabled.  20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 404.1520(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching her decision.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The Court must examine the entire record, but it may not review the record *de novo*, resolve conflicts in the evidence, or make credibility determinations.  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012).  Rather, if the Commissioner's

decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  42 U.S.C. § 405(g); *Bass*, 499 F.3d at 509.

## IV.  ANALYSIS

Thomas argues that ALJ Isaacs improperly weighed the evidence, particularly the plethora of medical experts opinions.  [Record No. 16-1, pp. 1-3]  Of course, the Court is not tasked with re-weighing the evidence, but merely assessing whether ALJ Isaacs's decision was supported by substantial evidence.  Nevertheless, Thomas contends that her decisions to assign little weight to Drs. Kincaid and Neal's opinions were impermissible.  [*Id.*]  And although ALJ Isaacs placed significant emphasis on Dr. Genther's opinion, Thomas argues that she did not properly apply that opinion in her RFC analysis.  [*Id.* at 2]  He also contends that her evaluation of the severity of his mental impairments was not supported by substantial evidence.  [*Id.* at 2-3]  The Commissioner responds that Thomas's "claim of error is merely an invitation for this Court to re-weigh the evidence and make its own finding[s]" of fact.  [Record No. 18, p. 7]  He contends that ALJ Isaacs's decision is supported by substantial evidence.  [*Id.* at p. 1]

### A.  The ALJ properly weighed the medical opinion evidence.

Although Thomas's arguments do not make the distinction, medical opinions are entitled to varying degrees of deference, depending on the provider's relation to the claimant.  For claims such as Thomas's (filed before March 27, 2017), the opinions of treating physicians generally are entitled to controlling weight when they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record.  When an ALJ does not give such opinions controlling

weight, he or she must provide "good reasons" to explain the amount of weight given.[2]  *See Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); 20 C.F.R. § 404.1527(c)(2).  On the other hand, the opinions of one-time examining sources are not entitled to any special degree of deference.  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  Instead, such an examiner's opinion should be weighed considering the factors laid out in 20 C.F.R. § 404.1527(c).

### 1.  The Treating Source Opinions

As noted, Thomas argues that Dr. Neal's treating source opinion was improperly discounted.  [Record No. 16-1, pp. 1-2]  Specifically, he contends that Dr. Neal's long history of treatment should overcome the fact that he did not personally prepare the opinion, and his endorsement should entitle the opinion to controlling weight.  [*Id.*]  Of course, a treating source's signature alone is not sufficient to entitle an opinion to controlling weight.  And here, ALJ Isaacs provided good reasons for giving little weight to the opinion.  For example, she pointed out that not only was the opinion merely endorsed by Dr. Neal, but the opinion was also provided in 2016 to support Thomas's previous application.  [Tr. 27, 700]  As such, it did not clearly cover his more recent treatment.[3]  [Tr. 27]  Elsewhere in her decision, ALJ Isaacs recounted Dr. Neal's treatment notes that repeatedly documented the effectiveness of his treatment.  [Tr. 25]  These notes contradicted the more severe limitations observed in the

---

[2]     The "treating source rule" was eliminated for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §§ 404.1527; 404.1520c.

[3]     Thomas argues that "Dr. Neal reviewed the [opinion] in 2018 and agreed that it was a complete, thorough[,] and accurate assessment of [Thomas's] capacity due to his RA," and he cites page 700 of the Transcript to support this claim.  [Record No. 16-1, p. 1]  But that entry is dated February 18, 2016.  [Tr. 700]  The Court's review of the record did not reveal any endorsement of the opinion by Dr. Neal after this date.  Accordingly, the Court finds no basis for concluding that this self-serving argument entitles Thomas to relief.

- 13 -

endorsed opinion.  [*See* Tr. 707-08; 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's medical opinion . . . is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").]  Accordingly, the weight assigned to Dr. Neal's opinion was reasonably supported.

Thomas also challenges ALJ Isaacs's refusal to give controlling weight to Dr. Kincaid's opinion.  Although he acknowledges that Dr. Kincaid treated him for only five months prior to providing her opinion, he states that conditioning the weight of a treating source's opinion on the length of treatment is "arbitrary."  [Record No. 16-1, p. 3]  However, the regulations expressly predicate the weight of a treating source's opinion on the length of the relationship between the physician and the claimant.[4]  *See* 20 C.F.R. §§ 404.1527(a)(2) (defining "treating source" in reference to the length of treatment), 404.1527 (c)(2)(i) (listing "[l]ength of the treatment relationship" as a factor to be considered in assigning weight).

Thomas further contends that Dr. Kincaid's opinion should have received more weight because it was "quite similar" to Dr. Genther's opinion, to which ALJ Isaacs gave significant weight.  [Record No. 16-1, p. 3]  When an ALJ determines that a treating source opinion is not entitled to controlling weight, appropriate weight is assigned to the opinion in accordance with the factors listed in 20 C.F.R. § 404.1527(c).  Consistency is one of the relevant factors.  20 C.F.R. § 404.1525(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").  Thomas suggests that the alleged consistency among Drs. Kincaid and Genthers' opinions, combined with ALJ Isaacs' emphasis on the latter opinion, should have led her to accept Dr. Kincaid's opinion in whole.

---

[4]    In fact, Thomas suggests that Dr. Neal's opinion should have received more weight because of the length of treatment.  [*See* Record No. 16-1, pp. 4-5.]

[Record No. 16-1, p. 3]  But ALJ Isaacs pointed out the differences between the two opinions—whereas Dr. Kincaid found that Thomas suffered marked impairments, Dr. Genther found that Thomas was only mildly or moderately limited in the same areas of mental functioning.  [Tr. 27, 400-403, 697-98]   And she concluded that these more severe restrictions were "not remotely support[ed]" by the objective medical evidence.  [Tr. 27]

Further, checklist or "circle-the-answer" forms, like the ones Dr. Kincaid submitted, are "weak evidence at best."  *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)).  And there is no indication that Dr. Kincaid relied on anything but Thomas's subjective claims when she checked the boxes indicating the alleged severity of his symptoms.  [Tr. 7-10, 697-99]  No treatment notes prepared by Dr. Kincaid are in the record, and ALJ Isaacs concluded that the notes in the record provide no support for Dr. Kincaid's findings.  [Tr. 26-27]

Additionally, the rule requiring a statement of good reasons for giving less than controlling weight to a treating physician's opinion is intended to permit a meaningful review of the ALJ's decision and inform claimants of the reasons for an ALJ's decision not to follow the opinion of their treating physician.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Here, ALJ Isaacs "identif[ied] specific discrepancies" within Dr. Kincaid's opinion and clearly explained why it got "the short end of the stick."  *See Hernandez*, 644 F. App'x at 473.  Accordingly, the goal of the reasons-giving requirement is satisfied, and Thomas fails to demonstrate that the ALJ's decision to assign less weight to Dr. Kincaid's opinion was error.

## 2.  One-Time Examiner Opinions

Next, Thomas contends that ALJ Isaacs failed to properly incorporate Dr. Genther's opinion into the RFC determination.   He emphasizes that Dr. Genther's definition of

- 15 -

"moderately impaired" included a suggestion that Thomas may "require significant structure and/or modifications in traditional work settings such as those found in a sheltered workshop." [Record No. 16-1, p. 2; Tr. 400]   Because Dr. Genther found that Thomas suffered some moderate limitations, he argues that ALJ Isaacs was bound to incorporate the sheltered workshop suggestion in the RFC.  [Record No. 16-1, p. 2]

Thomas's argument is unavailing.   First, Dr. Genther found that Thomas was moderately limited only in his ability to "deal with the public" and "tolerate [the] stress and pressure associated with day-to-day work activity."  [Tr. 401]  Of course, ALJ Isaacs was not bound by this finding of a one-time treating source, even if she assigned it significant weight. *See Bernola v. Comm'r of Soc. Sec.*, 127 F. Supp. 3d 857, 863 (N.D. Ohio 2015).  But the ALJ nevertheless incorporated this restriction into the RFC by including a limitation that Thomas is unable to interact with the public.  [Tr. 24]  Second, Dr. Genther found that Thomas's ability to interact and work with his coworkers was "*mild to moderately* limited."  [Tr. 401 (emphasis added)]  The RFC limited him to "no more than occasional interaction with co-workers," which was certainly not erroneous given the range of limitations Dr. Genther observed.  [Tr. 24]  Therefore, Thomas's argument that ALJ Isaacs "overtly reject[ed]" Dr. Genther's opinion is contradicted by her decision, and the assigned RFC is substantially supported by the evidence. [Record No. 16-1, p. 2]

Thomas also suggests that ALJ Isaacs erroneously discounted Holbrook-Watkins's opinion.  [*Id.* at pp. 2-3, 6]  Holbrook-Watkins found that Thomas suffered marked or extreme impairments on his ability to interact with others and concentrate.  [Tr. 589-593]  He argues that her opinion was substantially supported by the treatments notes of other physicians, and therefore it should have been assigned more weight.  [Record No. 16-1, pp. 2-3]

ALJ Isaacs found that Holbrook-Watkins's opinion was "not at all support[ed]" by the medical evidence. [Tr. 27] She found Thomas's claims regarding his social limitations were undercut by the fact that he regularly attends church gatherings with upwards of twenty people. [Tr. 23, 50] Notably, Holbrook-Watkins's findings were more restrictive than any other medical source opinion, and it was provided in check-list form with any accompanying evidence. *See Hernandez*, 644 F. App'x at 473; 20 C.F.R. 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, . . . the more weight we will give that medical opinion."). And as ALJ Isaacs pointed out, the only supporting evidence for Holbrook-Watkins's opinion was Thomas's subjective complaints. [Tr. 27] Because ALJ Isaacs found that these claims were not credible, she properly refused to accept Holbrook-Watkins's opinion.

### B.  The ALJ's decision is supported by substantial evidence.

Thomas contends that ALJ Isaacs's decision was not supported by substantial evidence because she undervalued the debilitating nature of his mental impairments. [Record No. 16-1, p. 2] Specifically, he argues that his claims regarding the cause of his significant weight loss are supported by the record, while the ALJ's conclusion is not. [*Id.*] Even assuming that Thomas's claims are substantially supported by the record, ALJ Isaacs found substantial support for the conclusion that his weight loss was due to diet and exercise. [Tr. 25-26] The Court's review of the record revealed numerous references to Thomas's efforts to lose weight, including Dr. Neal's direct statement in 2018 that Thomas "[h]as lost 100 [pounds] with diet and exercise." [Tr. 632]

The Commissioner is correct to characterize Thomas's argument as nothing more than an invitation to re-weigh the evidence, which is beyond the scope of review of the undersigned.

- 17 -

[Record No. 18, p. 7]; *see Reams v. Saul*, No. 6:18-CV-00270-GFVT, 2019 WL 7038260, at *4 (E.D. Ky. Dec. 20, 2019).  Where the ALJ considers the evidence and finds that one of two well-supported conclusions is more consistent, arguments that ask a court to rethink that conclusion are unavailing.  Accordingly, Thomas has not shown that ALJ Isaacs's erred in concluding that his weight loss was not a function of his mental impairments.

Thomas's challenges aside, ALJ Isaacs's decision is supported by substantial evidence. She based her disability determination on the evidence in the record and adequately explained why certain evidence was more or less persuasive.  She relied on the opinions that were most consistent with the objective medical observations throughout the entire relevant period. Further, the ALJ considered the combined effects of Thomas's severe and non-severe impairment to make a disability determination and develop his RFC.  At the final step of the analysis, she relied on a vocational expert to determine that significant jobs exist in the national economy that Thomas may perform based on his age, education, work experience, and RFC. Therefore, her decision is substantially supported by the evidence.

Based in the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.     Plaintiff Bobby Thomas's motion for summary judgment [Record No. 16] is **DENIED**.

2.     Defendant Commissioner Andrew Saul's motion for summary judgment [Record No. 18] is **GRANTED**.

Dated: October 27, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky